UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA ELIZABETH STANDIFIRD,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1]<br><br>Defendant. | Case No.:  20CV1630-GPC(BLM)<br><br>**REPORT AND RECOMMENDATION FOR ORDER (1) DENYING PLANTIFF'S BRIEF IN SUPPORT OF NOTICE OF NEW AUTHORITY, (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND (3) GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 18, 19 and 23]** |

Plaintiff Victoria Elizabeth Standifird brought this action for judicial review of the Social Security Commissioner's ("Commissioner") denial of her claim for Social Security Disability Insurance Benefits.  ECF No. 6.  Before the Court are Plaintiff's Opening Brief [ECF No. 18 ("Pl.'s Mot.")], Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's motion [ECF No. 19 ("Def.'s Mot."), Plaintiff's reply [ECF No. 20 ("Reply")], Plaintiff's Notice of New Authority [ECF Nos. 21 and 23], and Defendant's response [ECF No. 24].

This Report and Recommendation is submitted to United States District Judge Gonzalo P. Curiel pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(c) of the United States District

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.

Court for the Southern District of California.   For the reasons set forth below, this Court **RECOMMENDS** that Plaintiff's Brief in Support of Notice of New Authority be **DENIED**, Plaintiff's Motion for Summary Judgment be **DENIED**, and Defendant's Cross-Motion for Summary Judgment be **GRANTED**.

## **PROCEDURAL BACKGROUND**

On November 17, 2016, Plaintiff filed an application for supplemental security income beginning on April 1, 1999.  See Administrative Record ("AR") at 15.  The claim was denied initially on January 5, 2017, and upon reconsideration on May 3, 2017, resulting in Plaintiff's request for an administrative hearing on June 28, 2017.  Id.

On November 21, 2018, a hearing was held before Administrative Law Judge ("ALJ") Randolph E. Schum.  Id. at 15-29.  Plaintiff and an impartial vocational expert ("VE"), Ms. Gloria J. Lasoff, M.A., testified at the hearing.  Id. at 15.  In a written decision dated September 10, 2019, ALJ Schum determined that Plaintiff had not been under a disability, as defined in the Social Security Act, since November 17, 2016.  Id. at 28.  Plaintiff requested review by the Appeals Council.  Id. at 1.  In a letter dated June 26, 2020, the Appeals Council denied review of the ALJ's ruling, and the ALJ's decision therefore became the final decision of the Commissioner.  Id. at 1-3.

On August 21, 2020, Plaintiff filed the instant action seeking judicial review by the federal district court.  See ECF No. 1.  On June 30, 2021, Plaintiff filed an Opening Brief alleging that the ALJ failed "to logically and rationally synthesize the evidence of mental impairment."  Pl.'s Mot. at 11-14.  Defendant filed a timely Cross-motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment asserting that "[t]he ALJ weighed the evidence, including the medical opinion-evidence, when assessing Plaintiff's RFC."  Def.'s Mot. at 4-11.  Plaintiff replied on August 4, 2021.  Reply.

## **ALJ's DECISION**

On September 10, 2019, the ALJ issued a written decision in which he determined that Plaintiff was not disabled as defined in the Social Security Act.  AR at 15-29.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the relevant

time period (since November 17, 2016).  Id. at 17.  At step two, he considered all of Plaintiff's

medical impairments and determined that the following impairments were "severe" as defined

in the Regulations: "Asperger's Syndrome; a history of attention deficit/hyperactivity disorder; a

depressive disorder and a learning disorder (20 CFR 416.920(c))."  Id. at 17.  At step three, the

ALJ found that Plaintiff's medically determinable impairments or combination of impairments did

not meet or medically equal the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1

(20 CFR 416.920(d), 416.925 and 416.926).  Id. at 18.  At step four, the ALJ considered Plaintiff's

severe impairments and determined that her residual functional capacity ("RFC") permitted her

> to perform a full range of work at all exertional levels but with the following non-
> exertional limitations: However she would be able to understand, remember and
> carry out simple instructions and simple tasks.  She could perform work at a normal
> pace, but without production quotas.  Lastly, she should not work in a setting that
> includes constant/regular contact with the general public or more than infrequent
> handling of customer complaints.

Id. at 20.  The ALJ found that while Plaintiff's "medically determinable impairments could

reasonably be expected to cause some of the alleged symptoms;" Plaintiff's "statements

concerning the intensity, persistence and limiting effects of these symptoms are not entirely

consistent with the medical evidence and other evidence in the record."  Id. at 27.  The ALJ

further determined that there are jobs that exist in significant numbers in the national economy

that Plaintiff can perform.  Id. at 28.

## **NOTICE OF NEW AUTHORITY**

On September 3, 2021, Plaintiff filed a Notice of New Authority regarding the

constitutionality of the appointment of the Commissioner of Social Security.  ECF No. 21.  On

September 14, 2021, the Court issued an Order Setting Briefing Schedule Re Notice of New

Authority.  ECF No. 22.  Plaintiff and Defendant timely filed additional briefing in accordance

with the Court's Order.  ECF Nos. 23 and 24.

Plaintiff argues that the case should be reversed and remanded because the ALJ who

decided the case did so "under the auspices of Commissioner Saul without sufficient indicia of

accountability."  ECF No. 23 at 3.  Specifically, Plaintiff argues that the Court should find

1 prejudice because while "ALJ Schum was properly appointed by the Acting or Deputy

2 Commissioner Berryhill[,]"  "ALJ Schum was not subject to the removal by the President,

3 insulated by the tenure of Commissioner Saul, and further insulated by two-layered removal"

4 and, therefore, "not subject to sufficient accountability." Id. at 2.

5       Defendant contends that (1) Plaintiff's separation of powers argument does not entitle

6 her to a rehearing on her disability case, (2) there is no nexus between the removal restriction

7 and Plaintiff's alleged harm, (3) Plaintiff cannot demonstrate that Defendant's tenure protection

8 impacted the ALJ's determination of her claim, and (4) relief is precluded by the harmless error

9 doctrine, de facto officer doctrine, rule of necessity, and broad prudential considerations.  ECF

10 No. 24.

11       Two recent Supreme Court cases provide guidance on this issue.

12       1.    Seila Law, LLC v. CFPB, 140 S. Ct. 2183 (2020)

13       In Seila Law, LLC, the Consumer Financial Protection Bureau ("CFPB") sued the California

14 Law firm of Seila Law, LLC to force it to comply with an agency demand to produce records

15 related to an investigation into the firm for unlawful advertising, marketing, and sale of debt

16 relief services.  Seila Law, LLC, 140 S. Ct. at 2194.  Seila Law, LLC raised the defense that the

17 CFPB's single agency Director violated the Separation of Powers clause of Article II of the

18 Constitution because the Director was only removable for cause.  Id.  The Supreme Court agreed

19 and concluded that the CFPB's leadership by a single independent director insulated from

20 removal by the President, violated the separation powers.  Id. at 2207.  The structure of the

21 CFPB's leadership was also problematic because (1) the Director was "neither elected by the

22 people nor meaningfully controlled (through threat of removal) by someone who is[,]" (2) the

23 Director was not required to have "meaningful supervision" to issue final regulations, oversee

24 adjudications, set enforcement priorities, initiate prosecutions, and determine and impose

25 penalties on private parties, (3) the five-year term of the Director, which exceeded a term for

26 Presidency, could and would lead to situations where a President may be "saddled with a

27 holdover Director" whose priorities may differ greatly from that President, and (4) the CFPB

28 received funds outside the appropriations process, directly from the Federal Reserve, preventing

the use of budgetary tools by the President "to influence the policies of independent agencies." Id. at 2203-2205.

After concluding that the CFPB's single Director leadership was unconstitutional, the Court considered whether the Director's removal provision was severable from other provisions of the Dodd-Frank Act which established the CFPB.  Id. at 2207-2208.  The Court found that "[t]he provisions of the Dodd-Frank Act bearing on the CFPB's structure and duties remain fully operative without the offending tenure restriction.  Those provisions are capable of functioning independently, and there is nothing in the text or history of the Dodd-Frank Act that demonstrates Congress would have preferred no CFPB to a CFPB supervised by the President." Id. at 2209.  As a result, the Court remanded the case for further consideration.  Id. at 2211.

   2.   Collins v. Yellen, 141 S. Ct. 1761 (2021).

In Collins v. Yellen, the Supreme Court evaluated the constitutionality of another single Director agency, the Federal Housing Finance Agency (FHFA).  Collins, 141 S. Ct. 1761, 1770 (2021).  The Court held that the tenure protection of the Director of the FHFA created pursuant to the Housing and Economic Recovery Act of 2008, violated the Separation of Powers doctrine. Id. at 1770; see also 12 U.S.C. §§ 4501 et. seq.  However, the Separation of Powers violation did not apply to the Acting Director because the Act did not explicitly place any restrictions on the President's ability to remove an Acting Director.  Id. at 1783.  The Court noted that "[a] straightforward application of our reasoning in Seila Law dictates the result here."  Id. at 1784. The plaintiffs in Collins sought a judicial declaration invalidating prior actions by the FHFA directors who possessed removal protection and therefore headed an unconstitutionally structured agency.  Id. at 1787 (contending that FHFA actions were "adopted and implemented by officers who lacked constitutional authority and that their actions were therefore void ab initio").  Justice Alito, writing for the majority, found such relief unwarranted.  Id. at 1788. The key he wrote, is demonstrating that the unconstitutional provision actually caused the plaintiff harm.  Id. at 1788–89.  The Court refused to invalidate the prior actions in their entirety stating:

   All the officers who headed the FHFA during the time in question were properly
   appointed. Although the statute unconstitutionally limited the President's authority

to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA ... as void.

Id. at 1787 (emphasis in original); *see also* id. at 1789 (Thomas, J., concurring) ("The Government does not necessarily act unlawfully even if a removal restriction is unlawful in the abstract.").

　　　　3.　　Analysis

Plaintiff has failed to demonstrate that her case should be remanded for further proceedings pursuant to Collins. First, Plaintiff has not demonstrated that she was harmed by the alleged unconstitutionality of 42 U.S.C. § 903(a)(3). See Boger v. Kijakazi, 2021 WL 5023141, at *3 (W.D.N.C., Oct. 28, 2021) (finding that the ALJ's decision was not constitutionally defective where "Plaintiff simply argues that all actions taken by the Commissioner – and in turn his appointed ALJ's – are void due to the unconstitutional removal provision[,]" but "offers no evidence to show that there is a nexus between the unconstitutional removal restriction and the denial of his application for disability benefits"); see also Robinson v. Kijakazi, 2021 WL 4998397, at *3 (W.D.N.C., Oct. 27, 2021) (same); and Amanda B. v. Comm'r of Soc. Sec. Admin., 2021 WL 4993944, at *9–10 (D. Or., Oct. 26, 2021) (concluding that "the authorities cited by Plaintiff in her supplemental briefing do not affect the disposition of this matter" where Plaintiff "does not allege 'the SSA Commissioner took any action that is in any way related to the ALJ's decision' or the decision by the Appeals Council.").

Second, ALJ Randolph E. Schum was appointed in 2005 and reappointed in July 2018 by Acting Commissioner Nancy Berryhill. ECF No. 24 at 2; see also ECF No. 23 at 2. Because an Acting Commissioner does not have the same removal restriction as the Commissioner and because ALJ Schum was properly appointed, Plaintiff's argument is not persuasive in this case. See Collins, 141 S. Ct. at 1781 (because removal restrictions of the FHFA applied only to the Director, "any constitutional defect in the provision restricting the removal of a confirmed Director would not have harmed [the plaintiffs], and they would not be entitled to any relief" by actions of an Acting Director who enjoyed no such protections); see also Boger, 2021 WL

5023141, at *3 n.4 (finding that "Plaintiff's constitutional "removal restriction" argument is likely not even applicable to this case because ALJ Howard was appointed by an *Acting* Commissioner of Social Security who could be removed from that office at the President's discretion.") (citing 42 U.S.C. § 902(b)(4), Collins, 141 S. Ct. at 1783, and United States v. Eaton, 169 U.S. 331, 343 (1898)).[2]

Accordingly, the Court **RECOMMENDS DENYING** Plaintiff's request in her Brief in Support of Notice of New Authority. See Tracey Anne P. v. Kijakazi, 2021 WL 4993021, at *18 (S.D. Cal. Oct. 27, 2021) (noting that "other courts have found these cases and the memorandum opinion irrelevant to the consideration of the merits in social security disability actions") (citing Jon E.C. v. Kijakazi, 2021 U.S. Dist. LEXIS 197598, at *1 n.3 (Oct. 13, 2021) ("Having considered Plaintiff's submission, the Court finds that the authority cited therein would not affect the disposition of this case."); and Keith P. v. Comm'r Soc. Sec., 2021 U.S. Dist. LEXIS 187242, at *9 (Sept. 29, 2021) ("[T]he Court finds that the authority would not affect the disposition of this case.")); see also Robles v. Commissioner of Social Security, 2021 WL 4285170, at *4 n.6 (E.D. Cal., Sept. 21, 2021) (noting that Plaintiff did not develop his argument that the Department of Justice's Office of Legal Counsel's opinion "casts significant doubt onto the constitutionality of the appointment of the Commissioner of Social Security" and stating that the Court is "unconvinced that the cited authorities impact the instant case.") (citing Collins, 141 S. Ct. at 1802 (Kagan, J., concurring in part) (expressing doubt that the Supreme Court's decision would require "the mass of SSA decisions ... to be undone")).[3]

---

[2] The Court acknowledges that other courts determining the issue of traceability for purposes of jurisdiction have disagreed with this position as it relates to the Social Security Administration. See Dante v. Saul, 2021 WL 2936576, at *8 (D.N.M. July 13, 2021) (finding that "the plain language of § 902(a) suggests that the Presidential removal restrictions may apply not only to a Senate-confirmed Commissioner, but also to any individual serving in the office of Commissioner, including an Acting Commissioner"), but see Collins (noting that "we generally presume that the President holds the power to remove at will executive officers and that a statute must contain 'plain language to take [that power] away'" when discussing whether an acting director is a confirmed director) (quoting Shurtleff v. US, 189 U.S. 311, 316 (1903)).

[3] The Court will not address Defendant's additional arguments regarding harmless error, the De

7

**STANDARD OF REVIEW**

Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision.  42 U.S.C. § 405(g).  The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error.  Id.; see also Miner v. Berryhill, 722 Fed. Appx. 632, 633 (9th Cir. 2018) (We review the district court's decision de novo, disturbing the denial of benefits only if the decision "contains legal error or is not supported by substantial evidence.") (quoting Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008)).

Substantial evidence is "more than a mere scintilla but may be less than a preponderance." Ahearn v. Saul, 988 F.3d 1111, 1115 (9th Cir. 2021)  (quoting Molina v. Astrue, 674 F.3d 1104, 1110–11 (9th Cir. 2012) (quotation marks and citations omitted), superseded by regulation on other grounds.  It is relevant evidence that a reasonable person might accept as adequate to support a conclusion after considering the entire record.  Id.  See also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).  "In determining whether the Commissioner's findings are supported by substantial evidence, [the court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." Laursen v. Barnhart, 127 Fed. Appx. 311 (9th Cir. 2005) (quoting Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)).  Where the evidence can reasonably be construed to support more than one rational interpretation, the court must uphold the ALJ's decision.  See Ahearn, 988 F.3d at 1115 (citing Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001)).  This includes deferring to the ALJ's credibility determinations and resolutions  of evidentiary conflicts.  Id. ("[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities," and "we reverse only if the ALJ's decision was not supported by substantial evidence in the record as a whole") (quoting  Andrews v. Shalala, 53 F.3d 1035,

---

Facto Officer Doctrine, and Broad Prudential Considerations.  ECF No. 24 at 7-10.  See Boger, 2021 WL 5023141, at *3 n.4 ("the Court need not and does not reach the Commissioner's additional arguments (harmless error, De Facto Officer doctrine and Rule of Necessity) in support of the constitutionality of the ALJ's ruling").

1039 (9th Cir. 1995)).

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision.  See Miner, 722 Fed. Appx. at 633. Section 405(g) permits a court to enter judgment affirming, modifying, or reversing the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court also may remand the matter to the Social Security Administration for further proceedings.  Id.

## DISCUSSION

Plaintiff argues that the Court should reverse the decision of the ALJ because the ALJ failed to "logically and rationally synthesize the evidence of mental impairment."  Pl.'s Mot. at 11.  Specifically, Plaintiff argues that the ALJ erred by not addressing Dr. Simmons' failure to administer and report on Trails A and B testing when evaluating Plaintiff.  Id.  Plaintiff also argues that Dr. Simmons' findings were not persuasive given that she failed to recognize Plaintiff's Asperger's Syndrome, attention deficit hyperactivity disorder, depressive disorder, and learning disorder, all of which the ALJ found to be severe impairments.  Id. at 12.  Plaintiff further argues that the ALJ failed to consider the findings of Dr. Kramer in connection with the observations of the Regional Center where Plaintiff was observed on numerous occasions.  Id.  Plaintiff notes that Dr. Kramer's evaluation of Plaintiff included the assumption of Asperger's Syndrome, attention deficit hyperactivity disorder, major depressive disorder, and a learning disability in accordance with the ALJ's conclusions regarding Plaintiff's severe impairments.  Id. at 13.  Plaintiff concludes that the "ALJ did not give a logical or rational reason for rejecting Dr Kramer's opinions" and his finding that Dr. Kramer's opinions were inconsistent with the record is not supported by substantial evidence.  Id. at 14.  Accordingly, Plaintiff asks the Court to reverse and award benefits.  Id.

Defendant contends that "the ALJ properly weighed the evidence including the medical opinion evidence when assessing Plaintiff's RFC."  Def.'s Mot. at 4.  Defendant notes that the findings of three out of the four doctors who opined on Plaintiff's mental functioning were consistent with the RFC set for Plaintiff by the ALJ.  Id. at 5.  Defendant also notes that the

regulations do not require that any particular test be administered before providing a medical opinion, including Trails A and B.  Id. at 8.  Defendant asserts that given that the ALJ precluded Plaintiff from performing complex tasks in the RFC, the findings of the Trails A and B tests do not alter the outcome since the results showed "overall normal abilities," and only demonstrated impairment with more complex tasks.  Id. at 9.  Defendant further contends that Dr. Simmons "appropriately deferred to Plaintiff's treating physicians" for decisions regarding her impairments and notes that the appropriate inquiry is how the impairments impacted Plaintiff's capabilities, not what impairments she had, which is exactly what Dr. Simmons addressed.  Id. at 10.  Finally, Defendant asserts that the ALJ's interpretation of the record is what governs, and that Plaintiff failed to show that the record demands limitations beyond those established in the RFC.  Id. at 10-11.

Plaintiff replies that Dr. Simmons' "failure to assume the complete and accurate foundation renders [her] testimony insubstantial."  Reply at 2.  Because Dr. Simmons only diagnosed unspecified anxiety disorder, she cannot opine on the limitations that would come from Asperger's Syndrome.  Id. at 3.  Similarly, because Drs. Funkenstein and Bauer failed to find a learning disorder, attention deficit/hyperactivity disorder or depressive disorder, they cannot speak to the limitations that would come from those disorders.  Id.

A.   Relevant Medical Records

1.   Dr. Kalmar

On January 4, 2017, Dr. F. Kalmar, a State Agency Medical Consultant, reviewed Plaintiff's records and found that she had no significant physical limitations and no exertional or non-exertional limitations.  AR at 54.

2.   Dr. Funkenstein

On January 5, 2017, Dr. D. Funkenstein, a State Agency Medical Consultant, reviewed Plaintiff's records and found that Plaintiff was limited in her ability "to sustain the performance of detailed or complex tasks in public[,]" but retains the RFC to understand, remember, and carry out simple tasks.  Id. at 52-58.  Plaintiff's concentration was sufficient for completing tasks at an acceptable pace and she was "able to make simple work-related decisions, adhere to basic

safety rules, and adjust to changes in routine in a typical non-public unskilled setting." Id.  When assessing Plaintiff's Mental RFC, Dr. Funkenstein concluded that Plaintiff was not significantly limited in her ability to (1) remember locations and work life procedures, (2) understand and remember very short and simple instructions, (3) carry out very short and simple instructions, (4) work in coordination with or in proximity to others without being distracted by them, (5) make simple work-related decisions, (6) ask simple questions or request assistance, (7) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, (8) be aware of normal hazards and take appropriate precautions, and (9) travel to unfamiliar places or use public transportation.  Id. at 55-56.  Dr. Funkenstein further concluded that Plaintiff was moderately limited in her ability to (1) understand and remember detailed instructions, (2) carry out detailed instructions, (3) maintain attention and concentration for extended periods, (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, (5) sustain an ordinary routine without special supervision, (6) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (7) interact appropriately with the general public, (8) to accept instructions and respond appropriately to criticism from supervisors, (9) to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, (10) respond to change in the work setting, and (11) set realistic goals or make plans independently of others.  Id.

### 3.   Dr. Ombres

On April 27, 2017, Dr. Pamela Ombres, a State Agency Medical Consultant, reviewed Plaintiff's records and agreed with Dr. Kalmar's finding that Plaintiff had no significant physical limitations and no exertional or non-exertional limitations.  Id. at 67, 71.

### 4.   Dr. Bauer

On May 1, 2017, Dr. Keith Bauer, a State Agency Medical Consultant, reviewed Plaintiff's records and reached the same conclusions regarding Plaintiff's mental RFC as Dr. Funkenstein. Id. at 67-69.

///

### 5.    Dr. Kramer

Dr. Sheldon Z. Kramer, Ph.D., a licensed clinical psychologist, conducted a neuropsychological evaluation of Plaintiff on June 5, 2018 at the request of Plaintiff's attorney, Mr. David Shore.  Id. at 422-426.  Dr. Kramer reported that Plaintiff was well groomed, appropriate, and cooperative with good eye contact.  Id. at 423.  Plaintiff's thought processes were intact and there was no indication of any thought disorder or psychotic process.  Id.  She was oriented and Dr. Kramer found her concentration, impulse control, insight, and judgment to be fair.  Id.  Dr. Kramer administered several tests during the exam including the Weschler Adult Intelligence Scale III (WAIS-III), Wechsler Memory Scale III (WMS-III), Trails Making – Part A, Trails Making – Part B, and Wide Range Achievement Test 4 (WRAT 4).  Id. at 423-424.  Plaintiff's verbal scores were close to the borderline range of intelligence and her performance score was in the borderline level meaning she functioned in the overall borderline level at nine percent.  Id. at 424.  Plaintiff's working memory score was very low, and Dr. Kramer concluded that Plaintiff's ability to "keep verbal information in her memory to solve problems as well as her processing speed would be very slowed down and severely compromised at the 1 percent level."  Id.  Dr. Kramer found that Plaintiff's fund of general information "is at the most extremely low level." Id. at 425.  Plaintiff's memory scores were "surprisingly higher" than her general cognitive scores which may have been a result of mood fluctuations that Plaintiff experiences quickly and can result in uneven scoring.  Id.  Plaintiff also showed difficulty with reading comprehension and overall normal abilities in visual concentration and tracking tasks.  Id.  Dr. Kramer diagnosed Plaintiff with Asperger's Syndrome, ADHD combined type, Major Depressive Disorder, mild, recurrent, and Learning Disability, language impairment.  Id.  Dr. Kramer concluded that Plaintiff has poor impulse control, gets easily frustrated, is challenged in her ability to interact with others appropriately, subject to outbursts, unlikely to get along with peers and authorities well, would have difficulty organizing her tasks and following through, unable to work anywhere close to eight hours a day at the most severe level, and would require assistance with her finances if awarded social security.  Id. at 425-426.

///

5.   Dr. Simmons

Dr. Shirley Simmons, Ph.D. completed a psychological examination of Plaintiff on December 18, 2018, at the request of the Department of Social Services.  Id. at 465.  Dr. Simmons administered a Mental Status Examination, Weschler Adult Intelligence Scale – IV, Weschler Memory Scale – IV, and the Trails A and Trails B.  Id.  Dr. Simmons noted that Plaintiff was appropriately dressed and groomed, had good hygiene, was alert and responsive, and generally cooperative.  Id.  at 46.  Plaintiff was oriented as to time, place, person, and purpose for the visit, had organized thinking, and average intellectual functioning based on her ability to communicate and provide details.  Id.  Plaintiff's mood was euthymic, and her affect was full range and congruent.  Id. at 467.   Plaintiff's long term memory and short term verbal memory and attention and concentration were within normal limits.  Id.  Plaintiff's fund of knowledge was good, her insight and judgment were age appropriate, and she read on an eleventh grade level.   Id.   The test scores showed Plaintiff as having average cognitive ability, verbal comprehension, reasoning abilities, ability to sustain attention, concentrate, ability to exert mental control, process simple or routine visual material without making errors when compared to her peers, auditory memory capacity.  Id. at 468-469. Dr. Simmons found that Plaintiff's "ability to think with words is comparable to her ability to reason without the use of words." Id. at 468.  Dr. Simmons diagnosed Plaintiff with unspecified anxiety disorder and concluded that she did not meet the criteria for autism spectrum disorder.  Id. at 469.  Dr. Simmons concluded that Plaintiff could comprehend, remember, and carry out simple and repetitive instructions, manage her own day to day activities, pay bills, manage her household, and manage funds. Id.

B.   Relevant Program Records

On November 10, 2015, the San Diego Regional Center drafted an Individual Program Plan ("IPP") for Plaintiff with the goal of helping Plaintiff become as independent as possible. AR at 438.  Plaintiff participated in the formation of the IPP and was described as well groomed, cooperative, and socially appropriate.  Id.  Plaintiff was coherent with fair orientation and an ability to recall current people, places, and dates during the plan meeting.  Id.   It was noted that Plaintiff was independent with her activities of daily living, including showering, dressing,

brushing her hair and teeth, shaving, and hygiene.  Id. at 439.  She was able to complete chores such as doing dishes, cleaning up after a meal, creating a grocery list, taking out the garbage, and feeding the pets after prompting from her parents.  Id.  Plaintiff was described as able to verbalize her needs, initiate conversation, maintain eye contact, and utilize her cell phone and Facebook.  Id.  She was noted as being social and active but needing prompting from her mother to maintain contact with friends.  Id. at 440.  Plaintiff graduated from high school in 2013 and attended community college for a short time before dropping out after struggling to retain information in her classes.  Id. at 441.  Plaintiff was able to use public transportation, but hoped to earn her driver's license.  Id.  She enjoyed family outings, shopping, animals, horseback riding, dining out, and reading anime.  Id.  She had an ATM card funded by her parents, but become frustrated when trying to use cash.  Id.  Plaintiff had outbursts less than once a week that required intervention.  Id. at 442.  Plaintiff could be left alone for short periods of times and knew how to check in with her mother or to call 911 in an emergency.  Id. at 442-443.

On August 10, 2017, the San Diego Regional Center conducted an annual review for Plaintiff.  AR  at 474.  The review noted that Plaintiff lived with her parents, but was independent with her activities of daily living, including showering, dressing, and hygiene.  Id.  She was able to complete household chores with prompting and earned sixty dollars a week by helping in a hair salon.[4]  Id.  Plaintiff regularly checked in with her mother when she went out but could only be left alone for short periods of time.  Id.  Plaintiff was studying for her DMV test.  Id.

---

[4] Plaintiff's employer from the salon, Suzette Foy, submitted a letter included in the AR dated May 19, 2018.  AR at 286-287.  Ms. Foy explained that she permitted Plaintiff to work for her for a couple of hours a day, a few days a week as a favor to Plaintiff's mom so Plaintiff could gain some work experience.  Id. at 286.  Ms. Foy provided Plaintiff with a list of chores to be done each day of the week that included tasks like sweeping the floors, cleaning the bathroom, dusting, and filling shampoo bottles.  Id.  Ms. Foy noted that Plaintiff was very slow to complete her work, easily agitated when receiving instruction, obsessive over the tasks she wanted to perform, and unable or unwilling to correct and improve behaviors when directed to do so.  Id.  Ms. Foy described Plaintiff as insubordinate (talking back, rolling her eyes, refusing to listen), tardy, distracting to other employees, and engaging in inappropriate conversations with customers and staff.  Id. at 286-287.  Ms. Foy stated that she could never recommend Plaintiff for another position and concluded that Plaintiff had "no motivation, no common sense, no filters, [and] no sense of wanting to improve!"  Id. at 287.

14

On June 26, 2018, Options for All completed an Individualized Support Plan Integrated Employment for Plaintiff.  Id. at 449-455.  The plan noted that Plaintiff had a hard time following instructions, but that she could follow prompts and perform a wide variety of tasks once she was familiar with the task and willing to participate.  Id. at 450.  She did, however, need multiple prompts and a lot of support to stay on task.  Id.  Plaintiff earned her learner's permit and was practicing for her driver's license.  Id.  Plaintiff was offered volunteer opportunities, but showed little interest in participating and did not follow through.  Id. at 451.  Plaintiff's difficulty with following instructions or directions from others lead to concern that it would be difficult to find perspective work for Plaintiff.  Id. at 451.  Plaintiff was described as bright, social, open, personable, fully verbal, and honest and observant in a way that may come off as rude or harsh. Id.  Plaintiff sometimes overshared.  Id.  When Plaintiff discussed something she was interested in, she could be difficult to redirect and often dominated the conversation.  Id.  While she often refused to participate in something or chose to focus on her phone, Plaintiff was not usually argumentative or combative if asked to redirect.  Id.  Plaintiff was capable of communicating with community members outside of her group.  Id.  The plan also stated that Plaintiff enjoyed spending money and had "a hard time recognizing the finite value of money and will want to spend money impulsively."  Id. at 453.  Plaintiff was almost always late for program pick up and had trouble being prepared, on time, and reliable.  Id.

Also on June 26, 2018, San Diego Regional Center developed an IPP with Plaintiff.  Id. at 483, 488-496.  Plaintiff was described as smart, social, independent, and cooperative with developing her IPP.  Id. at 488.  Plaintiff was a client of San Diego Regional Center due to her Autism Spectrum Disorder.  Id.  Plaintiff's goal was to gain employment, hopefully working with animals, and to live independently.  Id.  The IPP described Plaintiff as fully independent with her self-care needs, responsible for chores around the house such as feeding and caring for pets, laundry, taking out the garbage, loading and unloading the dishwasher.  Id. at 489.  Plaintiff could pack her own lunch and safely operate the stove, microwave oven, and toaster to heat and prepare simple meals.  Id.  Plaintiff was completely verbal and able to (1) communicate her needs and wants, (2) intelligently respond to questions, (3) maintain good eye contact, and (4)

utilize a cell phone to contact friends and family.  Id.  While Plaintiff could be opinionated and speak out of turn, she was easily redirected.  Id.  Plaintiff graduated from high school with honors in 2013 and enrolled in Mira Costa College for a short time before dropping out.  Id. at 490.  She was able to use public transportation and failed the in car portion of her driving test by just three points.  Id. at 490-491.  Plaintiff had difficulty managing her money and liked to spend it impulsively.  Id. at 491.  She was better at communicating her feelings than she was in the past but dropping out of college and failing her driver's test hurt her self-esteem.  Id. at 491.  Plaintiff was physically healthy and not taking any medications.  Id. at 492.  She knew how to be safe, what to do in an emergency, and could be left alone for short periods of times.  Id.

C.   Analysis

In reaching his conclusion, the ALJ gave great weight to the opinions of Dr. Simmons and noted that "her assessment is consistent with her own findings in her examination of the claimant as well as other evidence in the claimant's medical records as a whole."  Id. at 24.  The ALJ gave minimal weight to Dr. Kramer's opinions noting that his (1) evaluation of Plaintiff occurred more than a year ago, (2) assessment was not consistent with other evidence in the medical records, specifically that Plaintiff had not sought psychiatric treatment for more than four years and was not taking any psychotropic medications, and (3) opinions were inconsistent with the IPP findings, the findings of the San Diego Regional Center, and Plaintiff's academic achievements.  Id.  The ALJ also gave great weight to the opinions of State Agency Medical Consultants Drs. Bauer, Kalmar, Ombres, and Funkenstein because they were "consistent with the evidence in [Plaintiff's] medical records as a whole."  Id. at 27.

1.   Dr. Simmons' Failure to Administer and Report on Trails A & B Testing

Plaintiff cites to Garcia v. Comm'r of Social Sec., 768 F.3d 925, 930 (9th Cir. 2014),  in support of her argument that the ALJ erred by giving great weight to the findings of Dr. Simmons while failing to acknowledge the alleged gap in Dr. Simmons' report due to her failure to administer and report on Trails A and B testing.  Pl.'s Mot. at 11.  Plaintiff argues that Trails testing is "reflective of concentration necessary for unskilled work activity."  Id.  There is no

16

1    discussion of Trails A and B testing in <u>Garcia</u> nor any indication that IQ testing requires Trails A

2    and B testing to be complete or for a disability determination.    <u>Garcia</u>, 768 F.3d 925.

3    Furthermore, as Defendant notes, Plaintiff's alleged disability is due to autism (Listing 12.10),

4    auditory processing disorder, scoliosis, and OCD, not an intellectual disorder under Listing 12.05,

5    like the plaintiff in <u>Garcia,</u> which has specific IQ testing requirements.    <u>Id.</u> at 931; <u>see also</u> AR

6    at 48.    Finally, Plaintiff does not provide any citations, case law (apart from <u>Garcia)</u>, or

7    regulations in support of her argument that the ALJ erred in giving great weight to Dr. Simmons'

8    findings because she failed "to administer and report on Trails A and B testing."  Pl.'s Mot. at

9    11.  Plaintiff does not address the issue in her reply.  <u>See</u> Reply.  Accordingly, the Court

10   **RECOMMENDS** that Plaintiff's motion be **DENIED** on this basis.

11                  2.    <u>Dr. Simmons' Failure to Consider Plaintiff's Severe Impairments</u>

12          Plaintiff argues that the ALJ erred because he failed to consider that Dr. Simmons found

13   no mental impairments while the ALJ found several severe mental impairments.  Pl.'s Mot. at

14   12.    Specifically, while the ALJ found that Plaintiff had severe impairments consisting of

15   Asperger's Syndrome, attention deficit/hyperactivity disorder, depressive disorder, and a

16   learning disorder, "Dr. Simmons did not assume the presence of those impairments" when

17   forming her opinions.  <u>Id.</u>    Plaintiff also argues that Dr. Simmons could not properly determine

18   Plaintiff's limitations without assuming the presence of her severe impairments.  Reply at 3.

19   Finally, Plaintiff argues that Dr. Kramer is the only doctor who provided "opinions consistent with

20   the medically determinable impairments that the ALJ found to be true."  <u>Id.</u> at 5.

21          Defendant contends that Plaintiff's argument fails, and she does not establish reversible

22   error. Oppo. at 10.  Defendant notes that Dr. Simmons properly deferred to Plaintiff's treating

23   physicians "when identifying the impairments that may impact Plaintiff's mental functioning

24   ("Axis III" diagnoses)."  <u>Id.</u>  Defendant further contends that "diagnosis alone is not sufficient

25   for establishing disability" and that the relevant inquiry is not what impairments she had, but

26   how Plaintiff's functional capabilities were impacted by her impairments, which was exactly what

27   Dr. Simmons evaluated.  <u>Id.</u>

28          The ALJ did not err.    Plaintiff argues that since a vocational expert cannot provide

20CV1630-GPC(BLM)

persuasive testimony regarding jobs available in the national economy if he or she is working from a hypothetical that does not assume all of the proper limitations, Dr. Simmons also cannot provide a persuasive opinion on Plaintiff's RFC without first assuming the limitations found by the ALJ.  Reply at 3-4.  This argument is not persuasive and Plaintiff does not provide any legal authority to support it.   Vocational experts and examining doctors have different roles. Vocational experts are required to avoid commenting on medical conditions or functional limitations caused by impairments. See   https://www.ssa.gov/appeals/ve.html.   Their responsibility is to provide the ALJ with information concerning the jobs available to a claimant given the claimant's RFC, not to determine the claimant's impairments, limitations due to impairments, or RFC.  Accordingly, a VE cannot properly determine the jobs available to a person without assuming the same limitations identified by the ALJ.  On the other hand, examining physicians such as Dr. Simmons, are required to examine plaintiffs, review medical records, and draw their own conclusions about a plaintiff's impairments and limitations.  AR at 465.  This is exactly what Dr. Simmons did.  Id.  The fact that her conclusions did not include the impairments noted by the ALJ does not automatically invalidate her opinion.  It also does not mean that the ALJ must disregard her opinions or give them less weight.  There is no rule that dictates that an ALJ may only give great weight to medical opinions provided by a doctor who finds exactly the same severe limitations as the ALJ.

Plaintiff provides no authority for her argument that a doctor's opinion should only be given great weight if the doctor finds the same impairments as the ALJ.  There are countless cases where an ALJ has given weight to a doctor's findings that are not exactly the same as his and cases where an ALJ finds a Plaintiff to have fewer limitations than what the doctors found. The ALJ's RFC is not wrong merely because he found more limitations than the doctor whose opinion the ALJ assigned great weight.

Even if Dr. Simmons' opinion should be given less weight because she did not assume the presence of autism, Asperger's syndrome, or other specific disorders, other doctors did assume autism and other disorders and they still concluded that Plaintiff is capable of an RFC in line with the ALJ's determination.  This is consistent substantial evidence in support of the ALJ's

decision.  For example, the ALJ gave great weight to the findings of Dr. Funkenstein who found Plaintiff was impaired with "Autistic Disorders and Other Pervasive Developmental Disorders" and yet still found Plaintiff to be only moderately limited in her activities of daily living, in maintaining social functioning, and maintaining concentration, persistence, and pace and able to work.  AR at 27, 52, 58.  Dr. Bauer whose opinion also was given great weight agreed with Dr. Funkenstein.  Id. at 66.  Their opinions are substantial evidence in support of the ALJ's finding even though the doctors did not find Plaintiff to have the exact same impairments as the ALJ.

### 3.   San Diego Regional Center Records

Plaintiff argues that the ALJ failed to properly consider Dr. Kramer's findings in the context of the San Diego Regional Center records regarding Plaintiff.  Pl.'s Mot. at 12.  Plaintiff argues that the San Diego Regional Center records show that she was less than cordial and less than cooperative with other participants and staff which supports Dr. Kramer's conclusion that Plaintiff cannot work an eight-hour day.  Id.  Plaintiff claims the instances of successful behavior by Plaintiff relied upon by Dr. Simmons are "[i]solated records that do not capture the essence of the clinical picture" and do not constitute a "logical and rational basis" for rejecting Dr. Kramer's findings.  Id. at 13.

Defendant contends that Plaintiff is the one relying on isolated excerpts from the record and notes that it is the ALJ's interpretation of the record that governs, not Plaintiff's.  Def.'s Mot. at 10.  Defendant further contends that Plaintiff fails to explain how evidence of her lack of cooperation or cordialness translates into additional functional limitations and prevents her from working an eight-hour workday in accordance with Dr. Simmons' findings.  Id. at 11.

The ALJ properly considered the San Diego Regional Center records.  The ALJ noted that the San Diego Regional Center records described Plaintiff as requiring prompts from her parents to complete household chores, needing assistance with laundry, being "overly opinionated" and likely to talk out of turn, having a difficult time following instructions, and occasionally coming off as rude or harsh, but that the records also described Plaintiff as bright, social, independent with her activities of daily living, managing her own personal finances, able to complete

household chores, able to engage in conversation, easily redirected when talking out of turn or being too opinionated, able to prepare simple meals for herself, capable of moving about the community using public transportation, caring for pets, and socializing on the phone and Facebook with friends and family, and able to perform a wide variety of tasks once she was familiar with them and willing to participate.  AR at 21-26.  The ALJ also considered the Adult Function Reports completed by Plaintiff's parents.  Id. at 24-25.  Plaintiff's stepfather noted that Plaintiff did not do well with multiple verbal instructions, needed reminders to go places, and was not good with money, but also stated that Plaintiff cared for a cat and horse, prepared her own meals, cleaned her room, vacuumed, did laundry, shopped in stores and online, socialized, did well with written instructions, and okay with single verbal instructions, got along well with authority figures, and learned coping skills to manage stress.  Id. at 24-25, 247-254.  Plaintiff's mother noted that Plaintiff had decreased understanding, difficulty with money, needed reminders to complete her chores, was easily frustrated, unable to multitask, did not handle stress or changes in routine well, had difficulty maintaining friendships, and limited awareness of the consequences of her actions, but is quite smart, cares for a cat and dog, prepares her own meals, uses public transportation, can go out alone, shops in stores and online, socializes, follows written instructions well, and is mostly respectful.  Id. at 24-25, 234-242.

While the San Diego Regional Center records and Adult Function Reports demonstrate that Plaintiff has some challenges, they also show that she is capable of performing many tasks. Where the evidence can reasonably be construed to support more than one rational interpretation, the court must uphold the ALJ's decision.  See Ahearn, 988 F.3d at 1115 (citing Mayes, 276 F.3d at 459).  This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts.  Id. ("[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities," and "we reverse only if the ALJ's decision was not supported by substantial evidence in the record as a whole") (quoting Andrews, 53 F.3d at 1039).  The RFC determined by the ALJ acknowledges the challenges described in the San Diego Regional Center records and Adult Function Reports, and is supported by the medical records, evidence, and opinions.  For example, limiting Plaintiff to understanding,

remembering, and carrying out simple instructions and tasks seemingly compliments San Diego Regional Center records and Adult Function Reports indicating that Plaintiff can follow written instructions very well, but needs individual verbal instructions instead of multistep verbal instruction.  This is supported by the medical records which state that Plaintiff can comprehend, remember, and carry out simple and repetitive instructions[5].  The RFC limits on customer contact and handling customer complaints incorporate the San Diego Regional Center records and Adult Function Reports indicating that Plaintiff is easily frustrated, does not handle stress well, and at times is too direct and harsh.  This too is supported by the medial record.[6]  The support in the San Diego Regional Center records and Adult Function Reports may be less clear for the RFC limitation of working at a normal pace without production quotes, but that limitation is supported by the medical record because Drs. Kalmar and Ombres both concluded that Plaintiff has no non-exertional limitations.  Id. at 54 and 67.

Contrary to Plaintiff's argument, the records relied upon by Dr. Simmons and the ALJ are not "isolated records."  Most, if not all of the IPP and San Diego Regional Center records and the Adult Function Reports from Plaintiff's family, state that Plaintiff is independent with activities of daily living, capable of performing chores with reminders, able to prepare her own meals, comfortable using public transportation, and able to care for pets including a cat, dog, and horse.[7]  Plaintiff is also described numerous times as bright, verbally able to articulate her needs,

---

[5] See AR at 54 (Dr. Kalmar finding Plaintiff has no non-exertional limitations), 55 (Dr. Funkenstein concluding Plaintiff is not limited in her ability to remember very short and simple instructions and only moderately limited in her ability to understand and remember detailed instructions), 68 (Dr Bauer – Same), 67 (Dr. Ombres finding no non-exertional limitations), 469 (Dr. Simmons stating Plaintiff could comprehend, remember, and carry out simple and repetitive instructions)].

[6] See Id. at 54 (Dr. Kalmar finding Plaintiff has no non-exertional limitations), 56 (Dr. Funkenstein finding that Plaintiff is moderately limited in her ability to interact appropriately with the general public), 67 (Dr. Ombres finding no non-exertional limitations), 69 (Dr Bauer finding that Plaintiff is moderately limited in her ability to interact appropriately with the general public).

[7] See AR at 439 (November 10, 2015 IPP from San Diego Regional Center), 474 (August 10, 2017 San Diego Regional Center annual review), 489 (June 26, 2018 IPP from San Diego

20CV1630-GPC(BLM)

social, and personable.[8]

Given that it is the ALJ's job to resolve any conflicts in the record and that five out of the six doctors who reviewed Plaintiff's records or examined Plaintiff formed opinions consistent with the RFC found by the ALJ, the Court finds that the ALJ did not fail to properly consider Dr. Kramer's findings in the context of Plaintiff's San Diego Regional Center records and that the ALJ's conclusion is supported by substantial evidence.

## CONCLUSION

For the reasons set forth above, this Court **RECOMMENDS DENYING** Plaintiff's Brief in Support of Notice of New Authority, **GRANTING** Defendant's cross-motion for summary judgment, **DENYING** Plaintiff's motion for summary judgment, and **AFFIRMING** the decision of the Commissioner.

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation must be filed with the Court and served on all parties no later than **December 10, 2021**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **December 23, 2021**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. See Sanchez v. Seibel, 830 Fed. Appx. 943 (9th Cir. 2020) (citing Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998) (holding that failure to object to a

---

Regional Center), 241 (December 5, 2016 Adult Function Report from Plaintiff's mother), 248 (Adult Function Report from Plaintiff's stepfather noting only that Plaintiff needs help deciding what to wear and deciding what to eat).

[8] See AR at 439 (November 10, 2015 IPP from San Diego Regional Center stating Plaintiff is able to verbalize her needs and social), 451 (June 26, 2018 Options for All completed an Individualized Support Plan Integrated Employment calling Plaintiff bright, social, open, personable, fully verbal, and observant),  488 ( June 26, 2018 IPP stating Plaintiff is smart, social, and independent), 235 (December 5, 2016 Adult Function Report from Plaintiff's mother noting Plaintiff is "quite smart" but has trouble navigating social situations and maintaining friendships), 251 (Adult Function Report from Plaintiff's stepfather noting Plaintiff enjoys parties, movies and attends church).

20CV1630-GPC(BLM)

1   magistrate judge's recommendation waives all objections to the magistrate judge's findings of

2   fact, but does not ordinarily waive objections to purely legal conclusions)).

3       **IT IS SO ORDERED**.

4   Dated:   11/30/2021

5                   Hon. Barbara L. Major

6                   United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20CV1630-GPC(BLM)