UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA ELIZABETH STANDIFIRD,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>Defendant. | Case No.: 3:20cv1630-JO-BLM<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION** |

Plaintiff Victoria Elizabeth Standifird ("Plaintiff" or "Standifird") and Defendant Commissioner of Social Security ("Defendant" or "Commissioner") have filed cross-motions for summary judgment. Dkts. 18, 19. Plaintiff and Defendant have also filed briefing on Plaintiff's Notice of New Authority. Dkts. 21, 23–24. On December 1, 2021, Magistrate Judge Barbara L. Major issued a Report and Recommendation recommending that the Court (1) deny Plaintiff's request to remand in her Brief in Support of Notice of New Authority; (2) grant Defendant's cross-motion for summary judgment; (3) deny Plaintiff's motion for summary judgment; and (4) affirm the decision of the Commissioner.

Dkt. 25 (the "R&R"). On December 10, 2021, Plaintiff filed objections to the R&R. Dkt. 26 ("Objections"). The case was transferred to the undersigned on January 5, 2022. Dkt. 27.

The Court has reviewed the R&R and the administrative record in this case. For the reasons set forth below, the Court adopts the R&R in its entirety.

## I. BACKGROUND

On September 3, 2020, Plaintiff initiated this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of Defendant's denial of her application for disability benefits.[1] Dkt. 6.

On November 17, 2016, Plaintiff filed a claim for supplemental security income under the Social Security Act. Administrative Record ("AR") 15. A hearing was held before Administrative Law Judge Randolph E. Schum (the "ALJ") on November 21, 2018. *Id.* Plaintiff, who was represented by an attorney, testified on her own behalf. *Id.* An impartial vocational expert also testified. On September 10, 2019, the ALJ issued a written decision denying Plaintiff's claim. *Id.* at 15–29.

In the decision, the ALJ conducted the five-step sequential analysis pursuant to 20 C.F.R. § 416.920(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. AR 17. At step two, the ALJ found that Plaintiff suffered from medically determinable severe impairments of Asperger's syndrome, attention deficit/hyperactivity disorder, a depressive disorder, and a learning disorder. *Id.* At step three, the ALJ found that Plaintiff did not meet a medical listing. AR 18–20. Prior to step four, the ALJ found that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: simple instructions and tasks, working at a normal pace without production quotas, and not working in a setting involving regular contact with the public or more than

---

[1] The Court referred the matter to United States Magistrate Judge Barbara L. Major. *See* 28 U.S.C. 636(b)(1)(B); S.D. Cal. Civ. L. R. 72.1.

infrequent handling of customer complaints. AR 20–27. At step four, the ALJ found that Plaintiff had no past relevant work. AR 27. At step five, relying on vocational expert testimony, the ALJ found that Plaintiff, with her residual functional capacity, was capable of work that exists in significant numbers in the national economy, such as cleaner, dishwasher, and housekeeper. AR 28.

In finding that Plaintiff retained a degree of residual mental functioning despite having cognitive and social impairments that significantly limited her ability to work, the ALJ considered medical evidence and medical history. AR 20–28. He gave great weight to the opinions of Dr. Simmons, who conducted a post-hearing consultative psychological evaluation of Plaintiff on December 18, 2018, at the request of the Department of Social Services. AR 223–4. The ALJ also gave great weight to the opinions of Dr. Kalmar, Dr. Funkenstein, Dr. Ombres, and Dr. Bauer, who each reviewed Plaintiff's records. AR 27. The ALJ granted no more than minimal weight, however, to the opinions of Dr. Kramer, who conducted a neuropsychological evaluation of Plaintiff on June 28, 2018 at the direction of Plaintiff's attorney. AR 24. In addition to the medical evidence, the ALJ also considered Plaintiff's subjective symptom testimony, individual program plan ("IPP") records at the San Diego Regional Center, an annual review performed by the San Diego Regional Center, adult function reports by Plaintiff's stepmother and stepfather, and a letter from Plaintiff's former employer. AR 20–27.

Plaintiff filed a request for review of the ALJ's decision with the Appeals Council, which was denied on June 26, 2020. Plaintiff then sought judicial review of the Commissioner's final decision in the instant action.

## II. STANDARD

The district court reviews *de novo* the portions of a magistrate judge's report and recommendation to which objections are made. Fed. R. Civ. P. 72(b). The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The district court is not required to conduct "any review at all," *de novo* or otherwise, of any issue that is not the subject of an

objection. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *see also United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) ("The statute makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo *if objection is made*, but not otherwise.").

The district court may set aside the Commissioner's denial of benefits if it is made on legal error or is not supported by substantial evidence in the administrative record. 42 U.S.C. § 405(g); *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997). Substantial evidence is "more than a scintilla but less than a preponderance." *Id.* Substantial evidence is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten v. Secretary of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court may set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his decision. *See Batson v. Commissioner of Soc. Sec. Admin*, 359 F.3d 1190, 1193 (9th Cir. 2004).

### III.  DISCUSSION

Plaintiff objects to the R&R on the grounds that it failed to properly consider (1) the constitutionality of the protection of an ALJ from sufficient oversight and (2) the improper weight that the ALJ accorded to the differing medical opinions before him. The Court addresses each argument in turn.[2]

### a. Constitutionality of the Protection of an ALJ from Sufficient Oversight

First, Plaintiff challenges the fact that the governing Social Security statute grants the President the authority to remove the Commissioner only for "neglect of duty or malfeasance in office." *See* 42 U.S.C. § 902(a)(3). She argues that the Commissioner's removal restriction—*i.e.*, the statutory protection of removal only "for cause"—is an

---

[2] Plaintiff made additional arguments before Magistrate Judge Major, but those issues are not the subject of a specific objection before this Court.

unconstitutional violation of the separation of powers. She also appears to argue that the ALJ, in turn, is also protected from removal by the Commissioner, thereby creating an unconstitutional "two-layered protection of an ALJ from sufficient oversight" by the President. Objections at 2. The Court disagrees that Plaintiff is entitled to a remand for a new hearing on this basis.

Contrary to Plaintiff's assertions, the ALJ's decisions are not automatically rendered void due to the statutory removal restriction. *See Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1136–37 (9th Cir. 2021) (finding that even if there were unconstitutional dual level removal restrictions, it would not invalidate ALJ's decision). The Supreme Court has held that a plaintiff seeking retrospective relief on the grounds of a removal restriction must demonstrate a nexus between the removal restriction and "compensable harm." *Collins v. Yellen*, 141 S. Ct. 1761, 1789 (2021).[3] Plaintiff is entitled to relief, therefore, only to the extent she demonstrates some harm connected to the removal restriction. *Id.* (citing as an example the hypothetical of the President attempting to remove a director but being prevented from doing so); *cf.* Objections at 3 (arguing solely that "the structure in place at the time of [plaintiff's] administrative process" was unconstitutional).[4]

In Plaintiff's case, the two-layer insulation from oversight and removal that she challenges did not exist, and even if it did, she has not demonstrated a resulting harm. Acting Commissioner Berryhill, who ratified the appointment of the ALJ in this case, was removable at will from her acting role by the President. 42 U.S.C. § 902(b)(4); *Collins*, 141 S. Ct. at 1783 ("[W]e generally presume that the President holds the power to remove

---

[3] Prospective relief is not at issue in this case given that Plaintiff does not appear to dispute that the current Commissioner is removable at will by the President. *See Constitutionality of the Comm'r of Soc. Sec.'s Tenure Prot.*, 2021 WL 2981542 (O.L.C. July 8, 2021).

[4] Critically, the purportedly unconstitutional removal restriction on the Commissioner does not invalidate the Commissioner's or the ALJ's *appointment*. *Id.* at 1787 ("Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office.").

at will executive officers and that a statute must contain 'plain language to take [that power] away.'"). As Acting Commissioner, Commissioner Berryhill did not enjoy the benefit of 42 U.S.C. § 902(a)(3), which limits the President's authority to remove an appointed Commissioner. Further, with respect to the Commissioner who presided when the ALJ issued the decision, Plaintiff has not demonstrated the requisite nexus between the removal restriction that she challenges and the denial of her disability claim. She merely argues that the ALJ's decision was faulty and wrong without pointing to how that wrong decision was the result of a lack of oversight by the President. Without more, that is not a sufficient showing of a connection between the removal restriction challenged and the Plaintiff's denial of benefits. Because Plaintiff cannot demonstrate that she suffered an injury caused by the President's inability to remove the Commissioner, the Court DENIES Plaintiff's request for a remand.

### b. Reliance on Medical Evidence

Second, Plaintiff challenges the ALJ's failure to rely on medical opinions that "assume the presence of an autism spectrum or a learning disorder." Objections at 4. The Court considers whether it was error for the ALJ to rely on medical opinions that did not assume all the medically determinable severe impairments found by the ALJ, and to disregard Dr. Kramer's opinion.

> *i. The ALJ's great weight accorded to opinions of Dr. Funkenstein, Dr. Bauer, and Dr. Simmons*

When evaluating opinion evidence, the ALJ must evaluate and give appropriate weight to every medical opinion that comes before him. Medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of [the plaintiff's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1). The ALJ gives weight to a medical opinion according to, *inter alia*, the supportability and consistency of that opinion. 20 C.F.R. § 416.927(c)(3)–(4). The ALJ gives greater weight to a medical opinion that is more consistent with the record

as a whole. *Id.* A medical opinion includes that of an examining physician, who must examine the plaintiff. 20 C.F.R. § 416.927(c)(1) (defining examining relationship). There is no requirement that a medical opinion must assume any impairments in the examination. Ultimately, the relevant inquiry is the plaintiff's functional capabilities, not what impairments were diagnosed. *See* 20 C.F.R. § 404.1520.

In this case, the ALJ relied in part on the opinions of Dr. Funkenstein, Dr. Bauer, and Dr. Simmons to reach his conclusion regarding Plaintiff's medically determinable severe impairments, whether they met the criteria of a medical listing, and Plaintiff's residual functional capacity. Specifically, the ALJ relied on the opinions of Dr. Funkenstein and Dr. Bauer that Plaintiff could perform simple tasks and make simple work-related decisions. AR 27, 52, 65. Dr. Funkenstein and Dr. Bauer assumed an impairment of autistic disorder. *Id.* at 52, 65. The ALJ also relied on the opinion of Dr. Simmons, who assumed the impairment of an anxiety disorder, and that Plaintiff would have no limitation in her ability to understand, remember, and carry out instructions. AR 23, 470. The ALJ summarized these opinions in his decision (AR 23–24, 27) and accorded great weight to them based on his finding that they were consistent with the evidence in Plaintiff's medical records as a whole (AR 24, 27). Accordingly, the Court finds that the ALJ properly considered the medical evidence and was supported by substantial evidence in according weight to the opinions of Drs. Simmons, Funkenstein, and Bauer based on their consistency with the record.

*ii. The ALJ's minimal weight accorded to opinions of Dr. Kramer*

The Court next considers whether the ALJ improperly disregarded Dr. Kramer's opinion in favor of the opinions of Dr. Simmons, Dr. Funkenstein, and Dr. Bauer. The Ninth Circuit distinguishes among three sources of medical opinions: (1) treating physicians (those who treat the claimant); (2) examining physicians (those who examine but do not treat the claimant); and (3) non-examining physicians (those who neither examine nor treat the claimant). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (superseded by statute on other grounds). Generally, the most weight is given to the

opinions of a treating physician, then an examining physician, and then a non-examining physician. *Id.* (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *see also* 20 C.F.R. § 404.1527(a)(1).

To reject the uncontradicted opinion of an examining physician, the ALJ must provide "clear and convincing" reasons for rejecting the opinion. *Pitzer*, 908 F.2d at 506. To reject the opinion of an examining physician that is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record" for rejecting the opinion. *Lester*, 81 F.3d at 830. "Specific and legitimate reasons" are set forth by "a detailed and thorough summary of the facts and conflicting clinical evidence, stating [the ALJ's] interpretation thereof, and making findings." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). Instead of merely offering his own conclusions, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citation omitted). In this case, Dr. Kramer was an examining doctor whose opinion was contradicted by the opinions of other examining and non-examining doctors. The ALJ may, therefore, reject Dr. Kramer's opinion only by providing specific and legitimate reasons supported by substantial evidence in the record. *Turner*, 613 F.3d at 1222.

Dr. Kramer concluded that Plaintiff would be unable to do functional work every day for eight hours due to Plaintiff's "unevenness of interacting with others appropriately," and her "poor attention and concentration." AR 23, 426. The Court finds the ALJ provided a detailed and thorough account of why he rejected Dr. Kramer's opinions.

*1. The ALJ's reasons for rejecting the opinion regarding unevenness of interacting with others appropriately.*

Dr. Kramer opined that Plaintiff's inability to interact with others appropriately would "interfere with any work environment at the severe level." AR 23, 426. Specifically, he opined that Plaintiff "is not able to hold back her impulses," "has

outbursts," and "would not be able to get along with her peers and authorities very well" at a severe level. AR 23, 425–26.

The ALJ rejected this opinion regarding Plaintiff's mood stability by pointing to extensive IPP records and findings of the San Diego Regional Center indicating Plaintiff's ability to appropriately interact with others. For example, the ALJ pointed to IPP records reporting that Plaintiff was "cooperative with the service coordinator," "socially appropriate during the review," and "actively participated in developing the IPP." AR 19–20. The ALJ further pointed to IPP records reporting that Plaintiff "had the ability to communicate her wants and needs appropriately," could "answer questions intelligently," and "had the ability to engage in back and forth conversations." AR 21. The ALJ pointed to IPP records reporting that Plaintiff "was a bright and social person and she was usually very open and personable from the beginning of meeting her," and "was very social and she would engage in conversation with others in the community." *Id.* 22.

Moreover, the ALJ pointed to IPP records indicating Plaintiff's ability to develop relationships. For example, the ALJ pointed to IPP records reporting that Plaintiff "utilized Facebook to keep in contact with relatives and friends," "kept in close contact with friends from school and contacted them via phone or social media," was "very social," and "would engage in conversation with others in the community." AR 19. The ALJ also pointed to an annual review conducted by the San Diego Regional Center, which reported that Plaintiff "had started to become friends with another San Diego Regional Center client and she had met up with her once to go bowling." AR 21.

Finally, the ALJ pointed to the fact that Plaintiff has not required recent treatment for any psychiatric conditions in rejecting the opinion that mood instability severely impacted Plaintiff's ability to work. Plaintiff was last seen psychiatrically in 2014 for obsessive-compulsive behavior and difficulty with attention and was not currently on any psychotropic medications. The ALJ reasoned that the fact that Plaintiff had not been seen psychiatrically for more than four years and was not taking any psychotropic medications

such as those for mood stabilization was inconsistent with "someone experiencing a disabling level of impairment." AR 24.

The Court finds that the ALJ put forth specific and legitimate reasons to reject Dr. Kramer's opinion regarding Plaintiff's severe disability resulting from mood instability. As described above, the ALJ pointed to and summarized extensive IPP records, findings by the San Diego Recreational Center, and medical history that were inconsistent with Dr. Kramer's opinion regarding Plaintiff's purported mood instability and social capabilities. The ALJ also put forth his interpretation of why Plaintiff's medical history—namely, the lack of medical treatment and medication—was inconsistent with Dr. Kramer's assessment of disabling mood instability. Therefore, the Court finds that the ALJ properly rejected the contradicted opinion of an examining physician by providing "specific and legitimate reasons that are supported by substantial evidence in the record. *See Bayliss v. Barnhart*, 427 F.3d at 1211, 1216 (9th Cir. 2005) (affirming rejection of an examining physician's opinion that is contradicted by clinical evidence).

*2. The ALJ's reasons for rejecting the opinion regarding poor attention and concentration.*

Dr. Kramer also opined that Plaintiff "would have difficulty organizing her tasks and following through with tasks." AR 426. In rejecting this opinion, the ALJ similarly pointed to IPP records and other medical evidence in the record. Specifically, the ALJ pointed to IPP records reporting that although Plaintiff "had a hard time following instructions[,] once she was familiar with a task and willing to participate, she could follow prompts and do a wide variety of tasks." AR 22. The ALJ also pointed to the academic achievements of the claimant. He specifically noted that Plaintiff graduated from high school with honors and completed two years of community college. AR 24, 440–41.

Accordingly, the Court finds that the ALJ provided specific and legitimate reasons that are supported by substantial evidence to reject Dr. Kramer's opinion.

## IV. CONCLUSION

For the reasons discussed above, the Court ADOPTS the R&R in its entirety. The Court hereby DENIES Plaintiff's request in her Brief in Support of Notice of New Authority, GRANTS Defendant's cross-motion for summary judgment, DENIES Plaintiff's motion for summary judgment, and AFFIRMS the decision of the Commissioner.

**IT IS SO ORDERED**.

Dated: March 31, 2022

_____
Honorable Jinsook Ohta
United States District Judge